UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| L.P., by and through her father, J.P., individually and on behalf of all others similarly situated, | Case No. 18-cv-1241 |
| | **CLASS ACTION** |
| Plaintiffs, | COMPLAINT FOR VIOLATION OF: |
| v. | 1) 29 U.S.C. §1132(a)(1)(B) |
| | 2) 29 U.S.C. §1132(a)(3) |
| BLUE CROSS AND BLUE SHIELD OF MINNESOTA, | |
| Defendant. | |

**NOW COMES** plaintiff L.P., by and through her father, J.P., who, on her own behalf and on behalf of all others similarly situated, asserts to the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the following:

## INTRODUCTION

**1.** This action, brought under the Employee Retirement Income and Security Act, 29 U.S.C. §§ 1001-1191c arises from defendant's arbitrary decision to deny health plan benefits for medically necessary services at residential treatment centers for mental health and substance abuse issues even though the plan at issue provided mental health and substance abuse benefits.

**2.** Residential treatment centers offer cost-effective treatment for adolescents and young adults with mental health and substance abuse

1

diagnoses. Residential treatment centers provide traditional, evidence-based mental health and substance abuse treatments in a protected setting.

3. Defendant denies coverage for treatment at residential treatment centers based on its incorrect view that such treatment is a "recreational service[]." Blue Cross's exclusion might be correctly employed to deny coverage for services rendered at a youth camp, or a health club, but it has no bearing on the medically necessary services rendered at a licensed residential treatment center. Based on the plan's plain language, and invoking the rules of construction applicable to ERISA health insurance plans, defendant has wrongfully denied coverage for these medically necessary services.

## JURISDICTION AND VENUE

4. This Court has jurisdiction in this ERISA matter via 28 U.S.C. § 1331.

5. Venue is appropriate in this district because plaintiff and defendant are either citizens of this judicial district and/or may be found here, and many of the breaches at issue took place here. 29 U.S.C. § 1132(e)(2).

6. In conformity with 29 U.S.C. § 1132(h), plaintiff has served this Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

7. At relevant times J.P. was a full-time employee of Bolton & Menk, Inc., an engineering firm with headquarters in Mankato, MN. While employed at Bolton & Menk, J.P. lived in Nicollet County, within this judicial district. His employer-sponsored health insurance at issue in this litigation was administered by defendant Blue Cross and Blue Shield of Minnesota, and is regulated by ERISA, 29 U.S.C. §§ 1001-1191c. Under ERISA, J.P. is a "plan participant" (29 U.S.C. § 1002(7)). A copy of the insurance plan is attached at **Exhibit A** to this Complaint; it is a boilerplate document whose material terms are identical for all similar insureds.

8. Defendant Blue Cross and Blue Shield of Minnesota Company is a non-profit company incorporated in Minnesota with its principal place of business located in with judicial district. In this Complaint, "Blue Cross" refers to the named defendant and all related, successor, predecessor, parent and subsidiary entities to which these allegations pertain.

9. Blue Cross had full discretionary authority to administer and pay benefits under the plan and accordingly owes fiduciary obligations to plan participants and beneficiaries.

10. J.P.'s daughter, L.P., who was covered under J.P.'s plan and is thus entitled to receive health insurance coverage based on the same plan language as

3

her father, has struggled for years with mental health issues such as depression, suicide ideation, self-harm and reactive attachment disorder. On June 30, 2016, after counseling, hospitalization, and other therapies had not been successful, L.P. was sent for medically necessary treatment to Change Academy at Lake of the Ozarks, Inc., a residential treatment center licensed as such by the state of Missouri. J.P. is L.P.'s legal guardian and conservator, per court order.

**11.** Change Academy is an intermediate health care program licensed by the state of Missouri as a "Residential Treatment Agency for Children and Youth." Missouri maintains staffing, programming, safety, training, and enrollment standards as part of this licensure.

**12.** In general, Change Academy uses a multidisciplinary approach to treat youths with mental health.

**13.** Patients, including L.P., receive a psychiatric assessment on intake. Personal treatment plans with tailored goals, objectives, and assignments that promote accountability, insight and growth are developed, implemented and evaluated.

**14.** L.P. was treated at Change Academy from June 30, 2016 to November 6, 2017. J.P. sought coverage for his daughter's treatment at Change Academy.

15. J.P. personally paid $189,477.74 for services rendered at Change Academy. Blue Cross reimbursed J.P. a total of $70,786 for those charges, but – after payment – has concluded without explanation that the payment was improperly made, and has demanded that J.P. pay the entire sum back to Blue Cross.

16. L.P. was a minor when the services at Change Academy began.

17. On March 6, 2018, Blue Cross denied the claims submitted for L.P's K.H.B.'s treatment at Change Academy "because coverage for recreational services as part of a treatment program is excluded from the Plan benefits." In addition, Blue Cross appeared to contend that Change Academy did not satisfy its definition of a residential behavioral health treatment facility.

18. The March 6, 2018 decision exhausted Blue Cross's mandatory internal appeals process.

## CLASS ALLEGATIONS

19. L.P., through J.P., brings this lawsuit under Fed. R. Civ. P. 23(a)(1)-(4) and (b)(1), (b)(2) and/or (b)(3) on her own behalf and on behalf of the following class:

> *All persons who are covered under any ERISA-governed health benefit plan insured and/or administered by Blue Cross of Minnesota that (1) provides coverage for mental or nervous disorders or substance abuse care and (2) who required treatment at one or more residential treatment center therapy programs during the applicable class period.*

**20.** The class period for L.P.'s and the class claims brought under 29 U.S.C. § 1132(a)(1)(B) extend back two years from the date of the commencement of this action and runs up to the date of class certification; the class period for L.P.'s and the class claims brought under 29 U.S.C. § 1132(a)(3) extends back six years from the date of the commencement of this action and runs up to the date of class certification.

**21.** Membership in the proposed class is so numerous that individual joinder of all class members is impracticable except by means of a class action. The disposition of the claims in a class action will benefit both the parties and the Court.

**22.** Plaintiff's claims are typical of all other class members from all other classes. Plaintiff, like all other class members, required treatment at a residential treatment center. Plaintiff, like all other class members, did not receive coverage of that treatment due to defendant's standard practice of excluding residential treatment centers as not covered.

**23.** Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the class and plaintiff is a member of the class that he seeks to represent.

24. Plaintiff will adequately represent the class because she has interests in common with the proposed class members and plaintiff has retained attorneys who are experienced in class action litigation.

25. Common questions of law and/or fact predominate over any questions affecting only individual members of the class. Common questions include, but are not limited to, the following:

- whether defendant breached its own plan language in denying coverage for services rendered at residential treatment center programs;

- what is the appropriate remedy for this breach of defendant's uniform plan language; and

- whether defendant's standard exclusion of coverage for services rendered at residential treatment centers violate the federal Mental Health Parity and Addiction Equity Act.

26. The prosecution of separate actions by individual members of each of the class would create a risk of:

- inconsistent or varying adjudications concerning individual members of the class that would establish incompatible standards of conduct for defendant; and

- adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members not party to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

27. The class action method is appropriate for the fair and efficient prosecution of this action.

28. Individual litigation of all claims that might be asserted by all members of the class would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of these related defendant.

29. The certification of the above class would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

## LEGAL CLAIMS

### Count 1 – Plan Enforcement under 29 U.S.C. § 1132(a)(1)(B)

30. L.P., on her own behalf and on behalf of the proposed class, restates paragraphs 1 – 29 as if fully set forth.

31. L.P.'s first legal claim is brought under 29 U.S.C. § 1132(a)(1)(B).

33. L.P. and the class have standing to assert claims "to recover benefits due … under the plan" and to "clarify [their] rights to future benefits under the terms of the plan," as authorized by 29 U.S.C. § 1132(a)(1)(B).

34. Plaintiff's claim is for plan enforcement for breach of the protections of the federal Mental Health Parity and Addiction Equity Act, whose terms are

incorporated as a matter of law into Blue Cross's plan with L.P. and class members.

35. The Mental Health Parity Act mandates parity between the "treatment limitations" placed on mental health benefits and on medical/surgical benefits:

> In the case of a group health plan ... that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that—
>
> (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan … and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii).

36. The Parity Act instructed the Secretaries of Labor, Health and Human Services, and Treasury to issue "guidance and information" on the Parity Act's requirements. That guidance was originally provided in Interim Final Rules before being issued as Final Rules. These regulations set forth a step-by-step process to determine whether an exclusion – or an insurer's application of an exclusion – violates the Act. *First*, the relevant limitation must be identified. A limitation can exist on the face of the Plan, or it may occur in application – both require parity. *Second*, the service in question must be classified into one of six categories. All services must be classified, including so-called intermediate

services (those between inpatient and outpatient treatment). ***Third***, the exclusion or limitation of the mental health care services at issue must be compared to ***all*** of the medical/surgical limitations within that category to determine if the exclusion of the insured's mental health care is permitted:

> A group health plan … that provides both medical/surgical benefits and mental health or substance use disorder benefits may not apply any … treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant … treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification.

29 C.F.R. § 2590.712(c)(2)(i))(A); Preamble, IFRs, 75 Fed. Reg. at 5413.

37.   The statutory requirements of the Parity Act become "terms of" the Plan and are enforceable through ERISA. *UNUM Life Ins. v. Ward*, 526 U.S. 358, 376-77, 119 S. Ct. 1380 (1999); *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program,* 222 F.3d 643, 648 n.4 (9th Cir. 2000); *Cisneros v. Unum Life Ins. Co.*, 134 F.3d 939, 944 (9th Cir. 1998).

38.   The Interim Final Rules explained that "the parity requirements for … treatment limitations are applied on a classification-by-classification basis." Preamble, IFRs, 75 Fed. Reg. at 5412.  The Interim Final Rules established six "classifications of benefits" for purposes of Parity Act compliance: (1) inpatient, in-network; (2) inpatient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. Preamble, IFRs, 75 Fed. Reg. at 5413.  These categories were expressly retained in

the Final Rule. 29 C.F.R. § 2590.712(c)(2)(ii)(A). With respect to "intermediate services" – services that do not fit squarely within the "inpatient" or "outpatient" categories — classification is still required. 29 C.F.R. § 2590.712(c)(2)(ii)(A); *Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.*, 852 F.3d 105, 116 (1st Cir. 2017) ("Intermediate services [are] services somewhere between traditional inpatient and outpatient care.").

39. While the insurer has discretion with respect to whether intermediate services should be classified as inpatient or outpatient, all intermediate services must be in the same category. 78 Fed. Reg. 68240, at 68246-7 ("Plans and issuers must assign covered intermediate mental health and substance use disorder benefits to the existing six benefit classifications in the same way that they assign comparable intermediate medical/surgical benefits to these classifications."). *See also id*. ("For example, if a plan or issuer classified care in skilled nursing facilities or rehabilitation hospitals as inpatient benefits, then the plan or issuer must likewise treat any covered care in residential treatment facilities for mental health or substance user disorders as an inpatient benefit.").

40. The Final Rules directed that "[r]estrictions based on geographic location, *facility type*, provider specialty, and other criteria that limit the scope or duration of benefits for services" are nonquantitative "treatment limitations" under the Parity Act. 29 C.F.R. § 2590.712(c)(4)(ii) (emphasis added). A blanket

11

exclusion on residential treatment center programs is an exclusion of "facility type," and is therefore a nonquantitative treatment limitation. As applied to mental health care, an insurer may not impose this nonquantitative treatment limitation

> with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification.

29 C.F.R. § 2590.712(c)(4).

**41.** While Blue Cross is free to adopt and incorporate standards that go beyond what the licensing state requires from its residential treatment center programs, it cannot do so and be in compliance with the Parity Act unless it similarly imposes burdens that go beyond states' licensing requirements for skilled nursing facilities and rehabilitation hospitals.

**42.** Blue Cross, however, covers services rendered at skilled nursing facilities **(Ex. A, p. 55)** but does not impose requirements beyond those imposed by the facilities' own licensing authority (*see* **Ex. A, p. 97**). By imposing requirements for coverage at residential treatment facilities that go beyond states' licensing requirements but not imposing similar enhanced requirements

for services rendered at skilled nursing facilities, Blue Cross has employed "processes, strategies, evidentiary standards" and other factors in assessing medically necessary services rendered at residential treatment centers that are different than the standards it employs in assessing medically necessary services rendered at skilled nursing facilities. That violates the Parity Act.

### Count 2 – Violation of Parity Act Under 29 U.S.C. § 1132(a)(3)

43. L.P., on her own behalf and on behalf of the proposed class, restates paragraphs 1-29 as if fully set forth.

44. Plaintiff's second claim is for breach of fiduciary duty for violations of the protections of the federal Mental Health Parity and Addiction Equity Act, whose terms are incorporated as a matter of law into Blue Cross's plan with L.P. and class members.

45. Pursuant to 29 U.S.C. § 1132(a)(3) L.P. and the class seek to have Blue Cross provide the class with corrective notice and information, including reformation of the relevant health plan documents.

46. 29 U.S.C. § 1132(a)(3), through which L.P. and the class may enforce the Parity Act as set forth in ERISA at 29 U.S.C. § 1185a, further provides that a participant or beneficiary may obtain other appropriate equitable relief to redress violations of ERISA or enforce plan terms. To the extent full relief is not available under 29 U.S.C. § 1132(a)(1)(B), then L.P. and the class seek equitable

remedies including, without limitation, unjust enrichment, disgorgement, restitution and surcharge arising out of Blue Cross's failure to administer its ERISA insured health plans as governed by the applicable provisions of the Federal Parity Act.

**WHEREFORE,** plaintiff requests the following:

- Certification of the class described above with the appointment of plaintiff as the class representative for the class and the undersigned attorneys as class counsel;

- An award of benefits representing those sums that plaintiff and class members paid for services at residential treatment center programs that should have been covered by defendant;

- Disgorgement of all profits defendant enjoyed through the use of money that should have been used to pay plaintiff's and class members' legitimate coverage claims;

- An order requiring defendant to cover all medically necessary services at residential treatment center programs in the future;

- An order requiring defendant to reprocess plaintiff's and all class members' claims incurred at any time during the class period in conformity with the Court's orders concerning the proper interpretation of the plan language at issue;

- Any and all other relief related to this action, including payment of reasonable attorneys' fees, costs, and interest where permitted by law.

Dated: May 3, 2018	**s/ Charles N. Nauen**
Charles N. Nauen (#121216)
Susan E. Ellingstad (#243346)
David W. Asp (#344850)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: ( 612) 339-6900
Fax: (612) 339-0981
cnnauen@locklaw.com
seellingstad@locklaw.com
dwasp@locklaw.com

Jordan Lewis (#203099)
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL  33334
Telephone:  (954) 616-8995
Fax:  (954) 206-0374
jordan@jml-lawfirm.com

ATTORNEYS FOR PLAINTIFF